IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GENEVIEVE HEALY-PETRIK,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:20-cv-00611-TC-JCB<br><br>District Judge Tena Campbell<br>Magistrate Judge Jared C. Bennett |

After several months of discovery in this insurance coverage case, Defendant State Farm

Fire and Casualty Company filed three motions in rapid succession.  State Farm first moved for

partial summary judgment on one of Plaintiff Genevieve Healy Petrik's[1] two remaining causes of

action.  (ECF No. 32.)  Second, it moved for summary judgment on Ms. Healy Petrik's failure to

join a required party (or, in the alternative, to limit recoverable damages).  (ECF No. 33.)  And

finally, State Farm moved to exclude Ms. Healy Petrik's sole expert witness, Matthew Jenson.

(ECF No. 34.)  The motion for partial summary judgment and the motion to exclude expert have

been fully briefed, but Ms. Healy Petrik has not responded to the motion for summary judgment,

though she insists that she opposes the relief State Farm seeks.  (ECF No. 61.)  The court held a

hearing on the motion to exclude expert on February 15, 2022.  (See ECF No. 63.)  For the

following reasons, the court GRANTS State Farm's three motions.

## **BACKGROUND**

Ms. Healy Petrik owns a 25% interest in a home in Park City, Utah.  The home was

insured by a State Farm homeowner's policy issued to Ms. Healy Petrik and her sister, Maryann

---

[1] Although the caption hyphenates Ms. Healy Petrik's name, her name does not contain a hyphen.

Fanous (another 25% owner).  Snow and ice buildup caused the roof to sustain water damage in January 2020, so Ms. Healy Petrik submitted a claim to State Farm.  State Farm inspected the property, estimated the repairs, and issued a $28,309.39 check to Ms. Healy Petrik and Ms. Fanous.  It also offered Ms. Healy Petrik another $15,039.10 for replacement cost benefits once she completed the repairs.  Dissatisfied with these numbers, Ms. Healy Petrik hired Matthew Jenson, a public adjuster working for Utah Public Adjusters, to assist with the claim.  Mr. Jenson was retained under a contingency fee agreement, under which he would receive 10% of any judgment or settlement paid by State Farm.  (Mot. Partial Summ. J. Ex. H (MPSJ Jenson Dep.) 33:16–34:12, ECF No. 32-8.)  He estimated that it would cost $60,742.18 to repair the damage.  Mr. Jenson sent State Farm his estimate, (id. Ex. D (Jenson Report) at 12, ECF No. 32-4), which State Farm rejected.  This litigation ensued.

Ms. Healy Petrik's complaint contained three claims: breach of contract, breach of the duty of good faith and fair dealing, and "bad faith."  (Compl., ECF No. 2-2.)  The court dismissed the bad faith claim under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 24.)  As the case progressed, it became clear that Ms. Healy Petrik was only seeking damages for the difference between Mr. Jenson's estimate and the amount State Farm paid, the public adjuster's fee, a 35% attorney's contingency fee, and interest.  (Mot. Partial Summ. J. Ex. E (MPSJ Healy Petrik Dep.) 41:12–42:6, ECF No. 32-5.)

Expert disclosures were due July 7, 2021, and expert reports were due August 6, 2021.  (Scheduling Order at 2, ECF No. 18.)  Ms. Healy Petrik identified Mr. Jenson as her only expert on July 7.  (Id. Ex. F (Pl.'s Expert Disclosures), ECF No. 32-6.)  His expert report, submitted on August 6,[2] contains eleven pages of repair figures and eighty-eight pages of photographs and

---

[2] As the court will briefly discuss later, State Farm disputes that the expert report was submitted on August 6.

diagrams.  (Id. Ex. G (Pl.'s Expert Report) at 7–105, ECF No. 32-7.)  Mr. Jenson used Xactimate software to generate his estimate.  (Mot. to Exclude Expert Ex. A (MEE Jenson Dep.) 23:6–24, ECF No. 34-1.)  Xactimate is commonly used in the insurance industry, but during a deposition, Mr. Jenson was unable to identify the source of Xactimate's pricing data.  (Id. 23:20–24, 25:1–9.)

During discovery, State Farm learned that Ms. Healy Petrik only held a 25% ownership interest in the property as a tenant in common.  (Mot. Summ. J. Ex. 2 (Pl.'s Resps. to Def.'s Interrogs.) at 2, ECF No. 33-2.)  Ms. Healy Petrik's three fellow tenants in common are her husband, Ms. Fanous, and Ms. Fanous's husband.  (Id.)  This ownership arrangement has been in place since 2012.  (Id. Ex. 3 (MSJ Healy Petrik Dep.) 13:11–14, ECF No. 33-3.)  And although Ms. Fanous was also a named insured on the State Farm policy, she was not joined as a plaintiff in this case.  In fact, none of the other three co-owners knew about the lawsuit until after it was filed.  (Id. 18:1–16.)  When they learned of the suit, they were not interested in joining as plaintiffs or filing their own claims.  (Id. 18:17–22.)  This is relevant because the homeowner's policy contains a condition that State Farm will not be liable "to the insured for an amount greater than the insured's interest."  (Mot. Summ. J. Ex. 1 (Policy) at 20, ECF No. 33-1.)

## LEGAL STANDARDS

In general, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if, under the governing law, it could affect the outcome of the lawsuit."  Arlin Geophysical Co. v. United States, 946 F.3d 1234, 1237 (10th Cir. 2020) (quoting Cillo v. City of Greenwood Vill., 739 F.3d 451, 461 (10th Cir. 2013)).  "A factual dispute is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented."  Id. (quoting Cillo, 739 F.3d at 461).

3

The movant must first show the "absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." Talley v. Time, Inc., 923 F.3d 878, 893–94 (10th Cir. 2019) (quoting Teets v. Great-W. Life & Annuity Ins. Co., 921 F.3d 1200, 1211 (10th Cir. 2019)). But the court must always view the facts and draw all reasonable inferences in favor of the nonmovant. Hall v. Allstate Fire & Cas. Ins. Co., 20 F.4th 1319, 1323 (10th Cir. 2021) (citing Cillo, 739 F.3d at 461).

## ANALYSIS

State Farm moves for summary judgment under Federal Rule of Civil Procedure 19. Because this motion is potentially dispositive, the court will start there. State Farm also moves for partial summary judgment on Ms. Healy Petrik's second cause of action. This motion is intertwined with State Farm's motion to exclude Mr. Jenson and his expert report, so the court will consider them together, second.

### I.    Motion for Summary Judgment

State Farm's motion for summary judgment asks the court to dismiss Ms. Healy Petrik's complaint for failure to join a required party under Rule 19. Because Ms. Fanous is a co-owner of the property and a named insured on the homeowner's policy, State Farm argues that she needed to be a plaintiff here. And because Ms. Healy Petrik failed to join her as a plaintiff, and the time to join parties has passed, the court ought to dismiss the complaint. Alternatively, State Farm asks the court to limit Ms. Healy Petrik's recoverable damages to an amount proportional to her 25% interest in the property. It argues that she should only be allowed to recover up to $1,030.85, which is 25% of Ms. Healy Petrik's claimed loss minus the amount State Farm has already paid (half of which is Ms. Healy Petrik's, and half, Ms. Fanous's).

Ms. Healy Petrik did not respond to State Farm's motion.[3]  "When a party fails to timely respond, the court may grant the motion without further notice if the moving party has established that it is entitled to judgment as a matter of law."  DUCivR 56-1(f).  With that said, the court turns to consider whether State Farm is entitled to judgment as a matter of law.

## A.  Rule 19

Federal Rule of Civil Procedure 19 provides the framework for analyzing necessary and indispensable parties to a lawsuit.  First, the court must decide whether an absent party is "required to be joined" under Rule 19(a).  If the party is necessary, the court must next decide whether they can be feasibly joined as a party under Rule 19(b).  If the party is necessary but cannot be feasibly joined, the court must finally decide whether the action can "in equity and good conscience" continue without the necessary party.  See N. Arapaho Tribe v. Harnsberger, 697 F.3d 1272, 1278–79 (10th Cir. 2012) (citing Citizen Potawatomi Nation v. Norton, 248 F.3d 993, 997 (10th Cir. 2001)).

Ms. Fanous is an absent party.  But is she a necessary party?  Rule 19 states that a party is necessary if

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

---

[3] Ms. Healy Petrik made substantive arguments against the joinder issue in an "objection" to State Farm's request to submit for decision.  (ECF No. 61.)  This was improper, and the court disregards this objection.

The court finds that Ms. Fanous is a necessary party. At a minimum, she "claims an interest relating to the subject of the action," as she is a named insured on the homeowner's policy at issue here and has a 25% ownership interest in the property. And because she is absent, she could later sue State Farm over this same claim, leaving State Farm "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Id.

Can Ms. Fanous be feasibly joined at this stage in the litigation? Necessary parties can be feasibly joined when they can be joined without "depriv[ing] the court of subject-matter jurisdiction" and when they are "subject to service of process." Fed. R. Civ. P. 19(a)(1); Austin Fireworks, Inc. v. T.H.E. Ins. Co., 809 F. Supp. 829, 830 (D. Kan. 1992). This case was removed under the court's diversity jurisdiction. (Notice of Removal at 2, ECF No. 2.) Ms. Healy Petrik is a Utah citizen, and State Farm is an Illinois corporation with principal place of business in Illinois. Ms. Healy Petrik previously stated that Ms. Fanous is a resident of Montclair, New Jersey. (Pl.'s Resps. to Def.'s Interrogs. at 2, ECF No. 33-2.) It therefore appears that joining Ms. Fanous would not destroy diversity.

Being "subject to service of process" means being subject to the court's personal jurisdiction. See Garfield Gas Gathering Co. v. Ind.-Ohio Pipe Co., 29 F.R.D. 8, 9–10 (D. Colo. 1961). A federal district court has personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Utah courts may exercise personal jurisdiction over parties who "own[], use, or possess[] . . . any real estate situated in this state," as long as the claim is "arising out of or related to" that ownership. Utah Code Ann. § 78B-3-205(4). This case certainly arises out of Ms. Fanous's ownership of the property. But due process must also be satisfied. Due process

6

requires that a party have "certain minimum contacts" such that the lawsuit "does not offend

traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S.

310, 316 (1945). Ms. Fanous appears to be a citizen of New Jersey, and despite owning a 25%

stake in a Utah property, she seems to have no other ties to Utah. The court finds that Ms.

Fanous lacks minimum contacts with Utah, and she thus would not likely be subject to personal

jurisdiction in Utah, so she cannot be feasibly joined as a plaintiff here.

Ms. Fanous is a "required-but-not-feasibly-joined party." Harnsberger, 697 F.3d at 1278.

In situations like this, Rule 19 instructs courts to consider the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice
> that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>     (A) protective provisions in the judgment;
>     (B) shaping the relief; or
>     (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were
> dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). There is no indication that a judgment here would hurt Ms. Fanous's

interests, but by proceeding without her, she could later sue State Farm separately. The potential

for duplicative efforts would prejudice State Farm, so the first factor weighs in favor of

dismissal. However, the prejudice to State Farm could be lessened in part by "shaping the

relief"—by capping Ms. Healy Petrik's damages proportional to her 25% interest in the property,

as State Farm requests in its motion. The second factor weighs against dismissal.

The third factor "is intended to address the adequacy of the dispute's resolution," but not

"from the plaintiff's point of view." Davis ex rel. Davis v. United States, 343 F.3d 1282, 1293

(10th Cir. 2003) (citing Provident Tradesmens Bank & Tr. Co. v. Patterson, 390 U.S. 102, 111

(1968)). This factor considers the "public stake in settling disputes by wholes, whenever

possible." Id. (quoting Patterson, 390 U.S. at 111).  Although Ms. Fanous appears to be

uninterested in suing State Farm, (MSJ Healy Petrik Dep. 18:17–22, ECF No. 33-3), this could

change.  Until the claim is time-barred, the case remains unfinished.  The third factor weighs in

favor of dismissal.  And Ms. Healy Petrik could easily seek relief in a different forum—state

court.  Indeed, that is where this case began back in August 2020.  (Notice of Removal, ECF No.

2.)  The fourth factor weighs in favor of dismissal.

Ms. Fanous is a necessary and indispensable party, and she cannot feasibly be joined.

Based on the Rule 19(b) factors, this case should be dismissed.  In her untimely "objection," Ms.

Healy Petrik correctly states that a dismissal for "failure to join a party under Rule 19" must be

without prejudice, as it cannot be an adjudication on the merits.  (Obj. at 2, ECF No. 61 (quoting

Fed. R. Civ. P. 41(b).)  See also Harnsberger, 697 F.3d at 1284.  Faced with the reality that a

dismissal without prejudice would give Ms. Healy Petrik another bite at the apple, State Farm

conditionally withdrew its Rule 19 argument.  (Resp to Obj. at 3–4, ECF No. 62.)  But State

Farm's hardly faces a Hobson's choice in its Rule 19 motion; it can fall back on its alternative

argument that the court should limit Ms. Healy Petrik's recoverable damages to an amount

proportional to her 25% interest in the property.  (Id.)  The court will now consider that

argument.

### B.  Damages

Because Ms. Healy Petrik only owns 25% of the property as a tenant in common, State

Farm argues that she should only be able to recover 25% of the loss.  Mr. Jenson's initial

estimate stated that it would cost $60,742.18 to repair the property damage.  (Jenson Report at

12, ECF No. 32-4.)  This is how much Ms. Healy Petrik sought in her initial disclosures.  (Mot.

Summ. J. Ex. 6 (Initial Disclosures) at 2, ECF No. 33-6.)  But Mr. Jenson's expert report reduces

8

this number to $56,060.44.[4]  (Pl.'s Expert Report at 15, ECF No. 32-7.)  State Farm still bases its argument on the initial $60,742.18 figure (perhaps because it is seeking to exclude Mr. Jenson's expert report).

The homeowner's policy states that "[e]ven if more than one person has an insurable interest in the property covered," State Farm will not be liable "to the insured for an amount greater than the insured's interest."  (Policy at 20, ECF No. 33-1.)  Ms. Healy Petrik's decision to proceed alone comes at a cost.  Her recovery must be capped at her proportional interest in the property.  If Ms. Healy Petrik argues that State Farm should pay $60,742.18 to repair the property under the policy, only 25% of that—$15,185.55—is hers.  The rest would belong to the other three tenants in common, had they been joined here as plaintiffs.[5]  State Farm already paid Ms. Healy Petrik and Ms. Fanous $28,309.39.  (Mot. Summ. J. Ex. 4, ECF No. 33-4.)  Ms. Healy Petrik's 50% share of the prior payout is $14,154.70, and State Farm is entitled to offset any damages by this amount.  Therefore, the court concludes that the maximum that Ms. Healy Petrik can recover in this lawsuit is $1,030.85.

In sum, although the court finds that Ms. Fanous is a necessary and indispensable party who cannot feasibly be joined, the court agrees with State Farm: Dismissing the case at this late stage would be wasteful.  Because State Farm later asked to withdraw its Rule 19 argument, the court will not dismiss the case.  Instead, the court GRANTS the motion for summary judgment to the extent that it asks for Ms. Healy Petrik's damages to be capped at $1,030.85.  With that finished, the court turns to the other two motions.

---

[4] Also, neither total includes "contents," which were valued at $490.21 in both the initial estimate and the expert report.  (Jenson Report at 13, ECF No. 32-4; Pl.'s Expert Report at 17, ECF No. 32-7.)  Because Ms. Healy Petrik did not argue that "contents" should be included in the total, the court will ignore the $490.21 in both reports.

[5] Of course, Mr. Petrik and Mr. Fanous are not named insureds on the policy, so they would not be entitled to recover anything from State Farm.  Because of the policy condition, State Farm could only be liable for half of the repair cost because only two of the owners were named on the policy.

II.     **Motion for Partial Summary Judgment & Motion to Exclude Expert**

State Farm gives two reasons why the court should grant partial summary judgment on Ms. Healy Petrik's second cause of action, breach of the duty of good faith and fair dealing. First, Ms. Healy Petrik's admitted damages—the cost of repairs, Mr. Jenson's fees, her attorney's fees, and interest—are insufficient for a claim for breach of the duty of good faith and fair dealing. Second, Mr. Jenson should be excluded as an expert, and without an expert, Ms. Healy Petrik cannot present the required standard of care evidence to the jury. After discussing damages, the court will analyze whether Mr. Jenson should be excluded.

   **A. Damages**

State Farm first argues that there must be damages other than contract damages to sustain a claim for breach of the duty of good faith and fair dealing. In other words, the cost of repairs, the adjuster's fees, the attorney's fees, and interest are not enough, and without damages, the claim must fail. Ms. Healy Petrik maintains that these damages are sufficient under Utah law.

State Farm identifies a recent on-point case from this court, Andersen v. Foremost Insurance Co. Grand Rapids, Michigan, No. 1:20-CV-115-DAK-DBP, 2021 WL 6087694 (D. Utah Dec. 23, 2021). Remarkably, Andersen "involved the same attorneys, same arguments, and same issues." (Reply at 7, ECF No. 57.) In Andersen, United States District Judge Dale A. Kimball granted an insurer's motion for partial summary judgment on an insured's claim for breach of the implied covenant of good faith and fair dealing. Although the Andersen facts are not identical to the facts here, Judge Kimball's reasoning sheds light on the issues at hand.

An implied duty of good faith and fair dealing exists in every insurance contract. Beck v. Farmers Ins. Exch., 701 P.2d 795, 801 (Utah 1985). This duty "contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is

10

valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim." Id.  For a garden-variety breach of contract claim, a plaintiff can recover both general and consequential damages.[6] Id.  But for a breach of the duty of good faith and fair dealing, "a broad range of recoverable damages is conceivable, particularly given the unique nature and purpose of an insurance contract." Id. at 802.

Attorneys' fees are recoverable for a breach of the duty of good faith and fair dealing if the fees are "reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made." Billings v. Union Bankers Ins. Co., 918 P.2d 461, 468 (Utah 1996) (quoting Beck, 701 P.2d at 801).  "The foreseeability of any such damages will always hinge upon the nature and language of the contract and the reasonable expectations of the parties." Beck, 701 P.2d at 802.  Judge Kimball in Andersen found that public adjuster's fees and attorneys' fees were not foreseeable because the insurance policy had an appraisal provision, and by hiring an adjuster and an attorney, the insured "circumvent[ed] the policy's provisions and manufacture[d] damages." Andersen, 2021 WL 6087694, at *5.

As Ms. Healy Petrik correctly states, the policy does anticipate that State Farm might be sued.  (See Policy at 22, ECF No. 33-1.)  But the single "Suit Against Us" paragraph is dwarfed by a two-page Appraisal procedure.  (Id. at 21–22.)  Granted, appraisal is optional.  Cf. Blakely v. USAA Cas. Ins. Co. (Blakely III), 691 F. App'x 526, 548 (10th Cir. 2017) (Bacharach, J., dissenting) (noting that the insurance policy's appraisal procedure was "optional").  However, the "nature and language of the contract" leads the court to conclude that appraisal—not

---

[6] As the Tenth Circuit has noted, Utah caselaw on consequential damages for breach of contract is "somewhat unclear." Blakely v. USAA Cas. Ins. Co. (Blakely I), 633 F.3d 944, 948 (10th Cir. 2011).  Since Beck, the Utah Supreme Court has narrowed the scope of consequential damages available for breach of contract. See Saleh v. Farmers Ins. Exch., 2006 UT 20, ¶ 25 n.4, 133 P.3d 428, 435 n.4; Machan v. UNUM Life Ins. Co. of Am., 2005 UT 37, ¶¶ 19–20, 116 P.3d 342, 346–47.

litigation—was the "reasonable expectation[] of the parties" for resolving a dispute about the loss amount. Beck, 701 P.2d at 802; see also Blakely III, 691 F. App'x at 536 (majority op.) (stating that the optional appraisal policy was "clearly designed to bring loss-payment disputes to a reasonably prompt conclusion"). Therefore, the public adjuster's fees and attorneys' fees were not foreseeable damages here.[7]

In Utah, a breach of the duty of good faith and fair dealing is a contract claim, not a tort claim. Canyon Country Store v. Bracey, 781 P.2d 414, 423 (Utah 1989); Beck, 701 P.2d at 801 (rejecting the tort approach). As a result, damages for breach of contract and for breach of the duty of good faith and fair dealing "may be similar or even identical." Braun v. Medtronic Sofamor Danek, Inc., 141 F. Supp. 3d 1177, 1187–88 (D. Utah 2015), aff'd, 719 F. App'x 782 (10th Cir. 2017). Even so, Judge Kimball found that contract damages cannot sustain a claim for breach of the duty of good faith and fair dealing. Andersen, 2021 WL 6087694, at *4. He cited Blakely III in support. But Blakely III did not address contract damages; it discussed damages for emotional distress, diminution in property value, and attorneys' fees. Blakely I already disposed of the breach of contract claim, holding that there were no contract damages at all. 633 F.3d at 948. State Farm offers no other caselaw in support.

Ultimately, there must be "a theory of damages under the [duty of good faith and fair dealing] independent of attorney's fees." Blakely III, 691 F. App'x at 538. As the court previously concluded, Ms. Healy Petrik can recover up to $1,030.85 in contract damages here. These damages are enough for a claim for breach of the duty of good faith and fair dealing.[8]

---

[7] The Utah Supreme Court has stated in dicta that an insured's attorneys' fees incurred in a suit for breach of the duty of good faith and fair dealing "plainly are reasonably foreseeable by the parties at the time the contract is made." Zions First Nat. Bank, N.A. v. Nat'l Am. Title Ins. Co., 749 P.2d 651, 657 (Utah 1988). While this may generally be true, when an appraisal provision exists as an alternative to litigation, attorneys' fees are not as foreseeable.

[8] In its reply memorandum, State Farm argues for an alternate basis for partial summary judgment: that Ms. Healy Petrik lacks evidence on State Farm's misconduct. (Reply at 5–7, ECF No. 57.) But "the court does not consider

### B.  The Expert

State Farm next argues that even if Ms. Healy Petrik had recoverable damages for her second claim, the court should exclude her expert, Matthew Jenson, from testifying.  State Farm gives three primary reasons for this conclusion.  First, he is being compensated by a contingency fee and is an "advocate" for Ms. Healy Petrik—not a neutral expert.  Second, Mr. Jenson's report is unsigned, untimely, and contains no expert opinions.  Third, his Xactimate software is of questionable reliability.

#### 1.  Mr. Jenson's Personal Interests

State Farm's first set of arguments concern Mr. Jenson's ability to serve as an expert witness because of his personal and financial stakes in the case.  Because Mr. Jenson is paid a contingency fee of 10% of any recovery or judgment, and because he is a self-described "advocate" for Ms. Healy Petrik, State Farm argues that he cannot be allowed to testify.

In Wheatridge Office, LLC v. Auto-Owners Insurance Co., No. 19-CV-00487-RM-STV, 2022 WL 36137 (D. Colo. Jan. 4, 2022), a sister district court recently confronted this very issue. There, an insured hired a public adjusting firm to estimate a claim under a contingency-fee agreement, and the adjuster sought to testify as both a fact witness and a rebuttal expert witness. On a motion to exclude expert, the court first stated the "settled principle of American law" that "expert witnesses should not receive contingent fees."  Id. at *14.  It noted that Colorado did not have a per se rule on the issue, but that "the usefulness of an expert witness 'depends in large measure on the degree to which the expert is able to convince the trier of facts of his or her strict and unyielding impartiality.'"  Id. (quoting City & County of Denver v. Bd. of Assessment

---

arguments raised for the first time in reply."  Surgenex, LLC v. Predictive Therapeutics, LLC, 462 F. Supp. 3d 1160, 1177 (D. Utah 2020) (citing Gutierrez v. Cobos, 841 F.3d 895, 902 (10th Cir. 2016)).

Appeals, 947 P.2d 1373, 1379 (Colo. 1997)).  Although the adjuster's contingency fee agreement predated the litigation, it still created a conflict of interest.[9]  Id.  And the court observed that excluding the adjuster as an expert would result in minimal prejudice because the plaintiff had other experts on the issue.  Id. at *15.  Finally, the court allowed the adjuster—a "key participant[]"—to testify about "the events that transpired during this claim process" as a fact witness.  Id.

"Every person is competent to be a witness unless [the Federal Rules of Evidence] provide otherwise. But in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. 601.  Because Utah law applies to the claim for breach of the duty of good faith and fair dealing, the court looks to Utah law.  In Utah, public adjusters may be paid by a contingency fee.  Utah Code Ann. § 31A-26-402(1).  But "[a] plaintiff or defendant in a civil action may not engage an expert witness by means of a contingent fee agreement unless approval is sought and received from the court."  Utah Code Ann. § 78B-1-152(2).  These two provisions are in tension, but neither speaks to whether an expert witness paid by a contingency fee is incompetent to testify.

Although the court is mindful of the public policy reasons to exclude experts with such direct financial stakes, the court will not exclude Mr. Jenson from testifying based on his contingency fee.  The key difference from Wheatridge is that here, Mr. Jenson is Ms. Healy Petrik's only expert witness.  Excluding him for the contingency fee alone would doom her second cause of action—a fatally prejudicial move.  As Ms. Healy Petrik points out, Mr. Jenson's estimate "[was] not changed for litigation."  (Opp'n at 7, ECF No. 46.)  In fact, the repair

---

[9] The court allowed the defendant to introduce the contingency fee agreement as evidence because the agreement could "be relevant to analysis of credibility of the witnesses."  Wheatridge, 2022 WL 36137, at *17.  The plaintiff could "respond to the introduction of such evidence through cross-examination and argument."  Id.

estimate in his expert report is nearly $5,000 <u>lower</u> than his initial estimate. (<u>Compare</u> Jenson Report at 12, ECF No. 32-4, <u>with</u> Pl.'s Expert Report at 15, ECF No. 32-7.) Any impeachment for bias could be brought out on cross-examination.

### 2.   The Expert Report

State Farm's second set of arguments concern whether Mr. Jenson's expert report comports with the Federal Rules of Civil Procedure. There are two disclosure requirements in the Federal Rules. First, "a party must disclose to the other parties the identity of any witness it may use at trial to present [expert] evidence." Fed. R. Civ. P. 26(a)(2)(A). Second, "this disclosure must be accompanied by a written report—prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2)(B). The expert report must contain

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

<u>Id.</u> If a party fails to fulfill these disclosure requirements, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In addition to arguments about Mr. Jenson's expert report being unsigned and untimely,[10] State Farm argues that the report lacks "a complete statement of all opinions the witness will

---

[10] State Farm complains that the expert report was disclosed three days late—on August 9 instead of August 6. (Mot. to Exclude Expert at 4 & n.1, ECF No. 34.) The envelope bears a postmark of August 9, though the filing itself says August 6. (<u>Compare</u> Pl.'s Expert Report at 2–3, ECF No. 32-7, <u>with</u> <u>id.</u> at 6.) August 6 was a Friday, and August 9 was a Monday. Mr. Nord admitted at oral argument that he mailed the expert report after hours on Friday evening, and the United States Postal Service did not postmark the envelope until Monday. The court excuses this

express" because the report contains no opinions.  "It is simply an estimate generated through Xactimate software."  (Mot. to Exclude Expert at 7, ECF No. 34.)  Ms. Healy Petrik responds by pointing out that the report is "more than just an Xactimate report"—it contains photos of the property damage and detailed line items of the repairs and their costs.  (Opp'n at 13, ECF No. 46.)  True, the report has photos and line items, but it lacks any opinions apart from the Xactimate estimate.  The only potential "opinion" is on the first page of the report.  Mr. Jenson writes that "[w]hile it may be very profitable to do it the way I am seeing it done, it is incorrect, and a misrepresentation of the policy and the coverage available."  (Pl.'s Expert Report at 7, ECF No. 32-7.)  He is referring to the way State Farm valued the claim.  To the extent that this is a valid expert opinion, it is unsupported by any "basis and reasons for" that opinion and therefore violates Rule 26(a)(2)(B)(i).

State Farm also contends that expert testimony is required to support a claim for breach of the duty of good faith and fair dealing, and because the expert report fails to address the relevant standard of care, the claim must fail.  To establish an issue that "[l]ay persons are not well equipped to decide," a party generally needs expert testimony.  See Jenkins v. Jordan Valley Water Conservancy Dist., 2013 UT 59, ¶ 16, 321 P.3d 1049, 1052.  This is especially true "in cases where the jury would be unable to determine the applicable standard of care without resorting to speculation."  Callister v. Snowbird Corp., 2014 UT App 243, ¶ 15, 337 P.3d 1044, 1049.

Ms. Healy Petrik's claim for breach of the duty of good faith and fair dealing alleges that State Farm breached its duty by "[f]ailing to properly investigate the Claim," "[f]ailing to fairly

---

minor deficiency as harmless.  State Farm also points to Mr. Jenson's missing signature on the report.  This, too, is harmless, considering Mr. Jenson's deposition testimony about the report.

evaluate the Claim," and "[f]ailing to promptly pay and settle the Claim," among other things. (Compl. ¶ 33, ECF No. 2-2.)  An insurer's claim-handling procedures are outside the knowledge of an average lay juror.  Without an expert to testify about the standard of care, the jury would be left to speculate about whether State Farm breached its duty to Ms. Healy Petrik.  And Mr. Jenson's expert report is devoid of any references to the standard of care, how insurers typically handle claims, or whether State Farm breached its duty.  These critical issues are missing from the report, so Mr. Jenson cannot be allowed to testify about them.

By disclosing an inadequate expert report, Ms. Healy Petrik has violated Rule 26.  But if these faults are "substantially justified" or "harmless," the court can excuse them.  Fed. R. Civ. P. 37(c)(1).  Showing substantial justification or harmlessness is Ms. Healy Petrik's burden.  See Palmer v. Rhodes Mach., 187 F.R.D. 653, 655 (N.D. Okla. 1999).  In assessing this issue, the court should look to four factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999).  But the court "need not make explicit findings" on the Woodworker's factors.  Id. Ms. Healy Petrik did not even respond to State Farm's argument about the standard of care, so she certainly did not argue for substantial justification or harmlessness.  All she argues is that "[t]he only potential alleged deficiency is [the report] is not signed."  (Opp'n at 13, ECF No. 46.) By failing to address this issue, she has waived it.

The court finds that Ms. Healy Petrik's failure to include any expert opinions or address the applicable standard of care in Mr. Jenson's report is neither substantially justified nor

harmless.  Other than using slightly altered numbers, Mr. Jenson's expert report is identical to his

pre-litigation public adjuster report.  The report violates Rule 26 and must be stricken.[11]

    3.  <u>The Xactimate Software</u>

State Farm's third argument concerns the reliability of the Xactimate software program

used to generate Mr. Jenson's estimate in his expert report.  All expert witness testimony must be

"the product of reliable principles and methods," and the expert must have "reliably applied the

principles and methods to the facts of the case."  Fed. R. Evid. 702(c), (d).  Rule 702 "imposes

on a district court a gatekeeper obligation to 'ensure that any and all scientific testimony or

evidence admitted is not only relevant, but reliable.'"  <u>Dodge v. Cotter Corp.</u>, 328 F.3d 1212,

1222 (10th Cir. 2003) (quoting <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 589 (1993)).

Ms. Healy Petrik must "show that the method employed by the expert in reaching the conclusion

is scientifically sound."  <u>Id.</u>

Ms. Healy Petrik only argues that Xactimate is "an industry-wide software used day in

and day out by insurance companies and adjusters, including State Farm, to determine pricing for

work related to insurance claims."  (Opp'n at 11, ECF No. 46.)  She does not address whether

Mr. Jenson used the software reliably for her property damage claim.  "The trial court's broad

discretion applies both in deciding how to assess an expert's reliability, including what

procedures to utilize in making that assessment, as well as in making the ultimate determination

of reliability."  <u>Id.</u> at 1223 (citing <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 152 (1999)).

Although the court designated its February 15, 2022 hearing as evidentiary, (ECF No. 54), Ms.

Healy Petrik did not present any evidence about Xactimate's reliability or Mr. Jenson's use of the

---

[11] Ms. Healy Petrik alternatively argues that Mr. Jenson should be allowed to give lay opinion testimony under Federal Rule of Evidence 701.  (Opp'n at 12–13, ECF No. 46.)  This, of course, is impermissible, as all Mr. Jenson's opinions are "based on scientific, technical, or other specialized knowledge within the scope of Rule 702"—namely, his specialized knowledge as a public adjuster.  Fed. R. Evid. 701(c).

software.  Finding no proof of its reliability in the expert report, the court must strike the report under Federal Rule of Civil Procedure 26(a)(2)(B)(ii) and Federal Rule of Evidence 702.

With Mr. Jenson's expert report stricken, he cannot be an expert witness.  The court therefore must exclude him from testifying as an expert in this case.  Because Ms. Healy Petrik no longer has an expert to testify about the standard of care, her claim for the breach of duty of good faith and fair dealing must fail.

## <u>CONCLUSION</u>

State Farm has established that it is entitled to judgment as a matter of law on the issues it presents.  Accordingly,

**IT IS ORDERED** that State Farm's motion for summary judgment is GRANTED. Based on her 25% interest in the property, Ms. Healy Petrik can only recover up to $1,030.85 in repair damages.

**IT IS FURTHER ORDERED** that State Farm's motion to exclude expert (ECF No. 34) is GRANTED.  Mr. Jenson is excluded as an expert witness, and his report is stricken.

**IT IS FINALLY ORDERED** that State Farm's motion for partial summary judgment on Ms. Healy Petrik's second claim for breach of the duty of good faith and fair dealing (ECF No. 33) is GRANTED.

DATED this 15th day of February, 2022.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge